# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
Case No.: 18-1497

* * * * * * * * * * * * *
TERESA LANDRUM,

            Petitioner,

v.

SECRETARY OF HEALTH
AND HUMAN SERVICES,

            Respondent.
* * * * * * * * * * * * *

Filed: June 16, 2016

Chief Special Master Corcoran

*Phyllis Widman,* Widman Law Firm, LLC, Linwood, N.J., for petitioner.

*Alec Saxe,* U.S. Department of Justice, Washington, D.C., for respondent.

## DECISION GRANTING AWARD OF FINAL ATTORNEY'S FEES AND COSTS[1]

On September 20, 2018, Teresa Landrum filed her claim in the National Vaccine Injury Compensation Program, alleging that she suffered from mast cell activation syndrome ("MCAS") and/or a significant aggravation of arthritis, rheumatoid arthritis with associated polyneuropathy, small fiber neuropathy, urticaria, among other injuries. Amended Petition (ECF No. 81). On October 8, 2025, a Decision was entered dismissing Petitioner's claim. Decision (ECF No. 104).

Prior to the issuance of the Decision, in January 2024 Petitioner filed a motion for an interim award of attorney's fees and costs. Petitioner's Motion for Fees ("Pet. Mot.") (ECF No. 99). Petitioner requested a total of $121,871.95 ($66,945.75 in fees and $54,926.20 in attorney's costs). *Id.* at 2. Respondent subsequently reacted to Petitioner's motion, deferring resolution of the motion to the special master's discretion. (ECF No. 100).

On April 15, 2026, Petitioner filed a supplemental motion for fees and costs. Pet. Supplemental Motion ("Pet. Supp. Mot.") (ECF No. 109). In it, she asked that her attorney be

---

[1] This Decision will be posted on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). **This means the Decision will be available to anyone with access to the internet**. As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the published Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen (14) days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the entire Decision will be available to the public in its current form. *Id.*

awarded an additional $5,088.00 in fees, as a result of the work performed responding to Respondent's Motion for a Ruling on the Record. Pet. Supp. Mot. at 1-2. On May 13, 2026, Respondent reacted to Petitioner's supplemental motion, deferring to the Court to determine if a final award of attorney's fees and costs has been met and if so, to exercise discretion in determining a reasonable award for final attorney's fees and costs. (ECF No. 111). Petitioner did not file a reply.

For the reasons set forth below, I hereby **GRANT** in part the two pending fees motions, awarding final fees and costs in the amount of $107,582.95.

## ANALYSIS

### I.  Petitioner's Claim had a Reasonable Basis

Although the Vaccine Act only guarantees a fees award to successful petitioners, a special master may also award fees and costs in an unsuccessful case if: (1) the "petition was brought in good faith"; and (2) "there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). I have in prior decisions set forth at length the criteria to be applied when determining if a claim possessed "reasonable basis" sufficient for a fees award. *See, e.g.*, *Sterling v. Sec'y of Health & Hum. Servs.*, No. 16-551V, 2020 WL 549443, at *4 (Fed. Cl. Spec. Mstr. Jan. 3, 2020). Importantly, establishing reasonable basis does not *automatically* entitle an unsuccessful claimant to fees, but is instead a threshold obligation; fees can still thereafter be limited, if unreasonable, or even denied entirely.

A claim's reasonable basis must be demonstrated through some objective evidentiary showing. *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020) (citing *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017)). This objective inquiry is focused on the claim—counsel's conduct is irrelevant (although it may bulwark good faith). *Simmons*, 875 F.3d at 635. In addition, reasonable basis inquiries are not static—they evaluate not only what was known at the time the petition was filed, but also take into account what is learned about the evidentiary support for the claim as the matter progresses. *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994) (upholding the finding that a reasonable basis for petitioners' claims ceased to exist once they had reviewed their expert's opinion, which consisted entirely of unsupported speculation). As a result, a claim can "lose" reasonable basis over time.

The standard for finding the existence of reasonable basis is lesser (and thus inherently easier to satisfy) than the preponderant standard applied when assessing entitlement, as cases that fail can still have sufficient objective grounding for a fees award. *Braun v. Sec'y of Health & Hum. Servs.*, 144 Fed. Cl. 72, 77 (2019). The Court of Federal Claims has affirmed that "[r]easonable basis is a standard that petitioners, at least generally, meet by submitting

2

evidence." *Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 287 (Fed. Cl. 2014) (internal quotations omitted) (affirming special master). The factual basis and medical support for the claim is among the evidence that should be considered. *Carter v. Sec'y of Health & Hum. Servs.*, 132 Fed. Cl. 372, 378 (Fed. Cl. 2017). Under the Vaccine Act, special masters have "maximum discretion" in applying the reasonable basis standard. *See, e.g., Silva v. Sec'y of Health & Hum. Servs.*, 108 Fed. Cl. 401, 401–02 (Fed. Cl. 2012).

Although Petitioner's claim was ultimately unsuccessful, I find that there was sufficient objective basis to entitle her to a fees and costs award. The record contained some evidence that Petitioner had experienced an immediate reaction to the vaccine she received on October 27, 2015, and thereafter arose a variety of symptoms related to her ultimate diagnosis of MCAS. *See* Ex. 7 at 1489; Ex. 37. Thus, in light of the exceeding lenient standard that governs reasonable basis determinations, a final award of fees and costs in this matter is permissible. And because I find no reason otherwise to deny a fees award, I will allow one herein.

## II.     Attorney's Fees

Determining the appropriate amount of the fees award is a two-part process. The first part involves application of the lodestar method—"multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343, 1347–48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down to take relevant factors into consideration. Id. at 1348. This standard for calculating a fee award is considered applicable in most cases where a fee award is authorized by federal statute. *Hensley v. Eckerhart*, 461 U.S. 424, 429–37 (1983).

An attorney's reasonable hourly rate is determined by the "forum rule," which bases the proper hourly rate to be awarded on the forum in which the relevant court sits (Washington, D.C., for Vaccine Act cases), except where an attorney's work was not performed in the forum and there is a substantial difference in rates (the so-called "*Davis*" exception"). *Avera*, 515 F.3d at 1348 (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency*, 169 F.3d 755, 758 (D.C. Cir. 1999)). A 2015 decision established the hourly rate ranges for attorneys with different levels of experience who are entitled to the forum rate in the Vaccine Program. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

Petitioner requests the following rates for her attorney, based on the years work was performed:

|  | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 |
|---|---|---|---|---|---|---|---|---|
| **Phyllis Widman** | $300 | $350 | $350 | $350 | $375 | $400 | $480 | $480 |

Ms. Widman's requested hourly rates for work performed 2017-22 are consistent with what she has previously been awarded for her work. *See e.g. Anthis v. Sec'y of Health & Hum. Servs.,* No. 18-1674V, 2021 WL 3404226 (Fed. Cl. Spec. Mstr. June 30, 2021). However, the requested hourly rate of $480.00 for 2023 and 2024 is higher than has been previously awarded by myself and other special masters. *Fernandez v. Sec'y of Health & Hum. Servs.,* No. 22-719V, 2025 WL 985152, at *2 (Fed. Cl. Spec. Mstr. Feb. 26, 2025) (awarding Ms. Widman an hourly rate of $420.00 for work performed in 2023 and $450.00 for work performed in 2024). I will follow *Fernandez* and award the lower rate, which results in a reduction in fees of **$1,764.00**.[2] No adjustments will be made to the time billed to the claim, however.

### III.    Litigation Costs

Just as they are required to establish the reasonableness of requested fees, petitioners must also demonstrate that requested litigation costs are reasonable. *Presault v. United States*, 52 Fed. Cl. 667, 670 (2002); *Perreira v. Sec'y of Dep't of Health & Hum. Servs.*, 27 Fed. Cl. 29, 34 (1992). Reasonable costs include the costs of obtaining medical records and expert time incurred while working on a case. *Fester v. Sec'y of Health & Hum. Servs.*, No.10-243V, 2013 WL 5367670, at *16 (Fed. Cl. Spec. Mstr. Aug. 27, 2013). When petitioners fail to substantiate a cost item, such as by not providing appropriate documentation to explain the basis for a particular cost, special masters have refrained from paying the cost at issue. *See, e.g.*, *Gardner-Cook v. Sec'y of Health & Hum. Servs.*, No. 99-480V, 2005 WL 6122520, at *4 (Fed. Cl. Spec. Mstr. June 30, 2005).

Petitioner seeks a total of $54,926.20 in costs. Pet. Int. Mot at 2. These include the filing fee, medical record retrieval, mailing costs, and costs associated with Petitioner's two experts: Dr. Omid Akbari and Dr. Jonathan Bernstein. Petitioner provided documentation for the filing fee, medical record retrieval, mailing, and thus, these costs are awarded in full. I discuss the costs associated with the experts below.

### A.    Expert Costs for Dr. Omid Akbari

Petitioner is requesting a total of $44,275.00 for the work of Dr. Akbari ($550.00 per hour for 80.5 hours of work). Pet. Int. Mot. at 45-49.But  Dr. Akbari has consistently been awarded an hourly rate of $500.00 per hour for his work in the Vaccine Program. *See Baker v. Sec'y of Health*

---

[2] Calculation of this amount is based on: ($11,712.00 – (Hours worked in 2023 (24.4) x $420 = $10,248) = $1,464.00) + ($4,800 – (Hours worked in 2024 (10) x $450) = $300) = $1,764.00.

*& Hum. Servs.,* No. 21-1869V, 2025 WL 1513417, at \*4-5 (listing cases awarding Dr. Akbari an hourly rate of $550.00); *Bristow v. Sec'y of Health & Hum. Servs.,* No. 19-457V, 2022 WL 17821111, at \*5-6 (Fed. Cl. Spec. Mstr. Nov. 15, 2022) (same); *see also Carroll v. Sec'y of Health & Hum. Servs.,* No. 19-1125V, 2023 WL 2771034, at \*6 (Fed. Cl. Spec. Mstr. Apr. 4, 2023); *Moenig v. Sec'y of Health & Hum. Servs.,* No. 21-993V, 2026 WL 1229784, at \*6-7 (Fed. Cl. Spec. Mstr. Mar. 23, 2026). I will also apply that slightly-lower rate (although I note that Dr. Akbari may well be entitled to a higher rate in future cases).

Additionally, a reduction in hours spent on this matter by Dr. Akbaris is necessary. Fees for experts are subject to the same reasonableness standard as fees for attorneys. *See Rochester v. United States,* 18 Cl. Ct. 379, 387 (1989) (stating that services that are "primarily of a secretarial or clerical nature…should be considered as normal overhead office costs included within the attorneys' fee rates"); *Baker v. Sec'y of Health & Hum. Servs.,* No. 99-653V, 2005 WL 589431, at \* 1 (Fed. Cl. Spec. Mstr. Feb. 24, 2005).

Here, Dr. Akbari billed for a total of 80.5 hours of work on this case, some of which included time downloading and highlighting references, preparing billing statements, and reviewing medical literature, among other things. But the invoices reveal instances in which he is charging for administrative tasks that are not compensable in the Vaccine Program. *See* Pet. Int. Mot. at 46 (Oct. 4, 2021: 2.4 hours "downloading PDF of 15/31 references and highlight relevant sections"; Oct. 6, 2021: 2.1 hours "downloading PDF of remaining 16 references and highlight relevant sections"; Aug. 25, 2022: 2.8 hours selection of 24 references out of 41, making notes to draft report, formatting."). Dr. Akbari has also been warned against billing for such tasks by other special masters. *See Moenig*, 2026 WL 1229784, at \*6; *Williams v. Sec'y of Health & Hum. Servs.,* No. 19-1269V, 2024 WL 1253768, at \*4 (Fed. Cl. Spec. Mstr. Feb. 28, 2024).

I am generally reluctant to deny compensation to experts who have attempted to assist a claimant – even in an unsuccessful case. At the same time, however, excessive billing by experts (especially when it does not appear the expert effectively assisted the claim's resolution) is something that can reasonably be called into question in calculating a fees and costs award. *See, e.g., Monte v. Sec'y of Health & Hum. Servs.*, No. 21-1960V, 2024 WL 1640006, at \*4 (Fed. Cl. Mar. 21, 2024); *Martin v. Sec'y of Health & Hum. Servs.*, No. 15-789V, 2020 WL 8674683, at \*4 (Fed. Cl. Dec. 8, 2020). In addition , special masters are permitted to use their discretion to take an across-the-board reduction in appropriate circumstances, and need not engage in a line-by-line evaluation when assessing what award is reasonable. *Broeklschen v. Sec'y of Health & Hum. Servs.,* 102 Fed. Cl. 719, 729 (2011); *see also Wasson v Sec'y of Health & Hum. Servs.,* 24 Cl. Ct. 482, 484 (1991).

Thus, special masters may "render a decision based on general guidelines as to a reasonable fee" in the context of the Vaccine Program and in the context of a particular case. *Wasson,* 24 Cl. Ct. at 484. *See Humphries v. Sec'y of Health & Hum. Servs.,* No. 18-1602V, 2023 WL 7131801,

at *5 (Fed. Cl. Spec. Mstr. Oct. 2, 2023) (reducing Dr. Akbari's hours by 20% for excessive billing). Here, such a reduction is called for – especially since an unsuccessful case should in most instances not require $40,000.00 in expert assistance. I thus reduce Dr. Akbari's requested time by 15%, for a total reduction of 12 hours. This results in a reduction of **$10,025.00, and Dr. Akbari is awarded a total of $34,250.00.**[3]

### B. Expert Costs for Dr. Jonathan Bernstein

Petitioner is requesting $7,500.00 for Dr. Bernstein's work in this matter (10 hours at $750.00 per hour). Pet. Int. Mot. at 43-44. Most of this work was performed in 2020 and 2021. *Id.*

While the time devoted by Dr. Bernstein to this matter was reasonably spent, his requested rate is high. A reasonable hourly rate of $500.00 per hour for 2020 was set for Dr. Bernstein in another case, where the special master discussed Dr. Bernstein's qualifications, including his educational background and professional experience. *Mulrenin ex rel. v. Sec'y of Health & Hum. Servs.,* No. 18-22V, 2020 WL 7868230, at *3-4 (Fed. Cl. Spec. Mstr. Dec. 10, 2020). I will apply the same rate herein. **This results in an overall reduction of $2,500.00, and Dr. Bernstein is awarded a total of $5,000.00.**[4]

### CONCLUSION

Based on the foregoing, and in the exercise of the discretion afforded to me in determining the propriety of a final fees award, I **GRANT** Petitioners' Motion for Attorney's Fees and Costs, and award a total of **$107,582.95 (reflecting $65,181.75 in attorney's fees and $42,401.20 in costs) to be paid through an ACH deposit to Petitioners' counsel's IOLTA account for prompt disbursement.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court **SHALL ENTER JUDGMENT** in accordance with the terms of this Decision.[5]

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

---

[3] Reduction in Dr. Akbari's fee was calculated by: Multiplying the hourly rate of $500.00 by the number of hours determined to be reasonably expended (80.5 x 15% =12; 80.5-12=68.5) ($500 x 68.5=$34,250.00)

[4] This amount is calculated by: 10 hours of work billed x $500 =$5,000.

[5] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.